PRESENT: All the Justices

JEFFREY STEPHENS

OPINION BY
v.  Record No. 131780          JUSTICE S. BERNARD GOODWYN
                                  September 12, 2014
SHELLIE RAE ROSE


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Lorraine Nordlund, Judge

In this appeal, we consider whether the Circuit Court of Fairfax County erred in issuing a protective order pursuant to Code § 19.2-152.10.

Background

Shellie Rae Rose (Rose) filed a petition in the General District Court of Fairfax County for a protective order against her former boyfriend Jeffrey Paul Stephens (Stephens). The general district court granted her petition, and Stephens appealed to the Circuit Court of Fairfax County.

The circuit court conducted an evidentiary hearing and found "that [Rose had] been reasonably placed in apprehension of bodily injury" by Stephens' actions, which constituted stalking. It granted Rose's petition. Stephens appeals, claiming that the circuit court erred in issuing the protective order because Rose failed to show that he directed an act of violence, force or threat toward her.

Facts

In 2007, Stephens and Rose were engaged to be married and had dated for approximately four years when they decided to end their relationship. According to Rose, the couple separated because Stephens had "become somewhat moody" and had "problems with anger management." At the hearing in circuit court, she said, "It felt like I was walking on eggshells all the time. I didn't know what triggers would cause him to get angry."

In 2008, Rose and Stephens communicated infrequently. On one occasion, they briefly chatted through online instant messaging. Rose also forwarded two emails to Stephens pertaining to doctoral programs in which he might be interested. Soon thereafter Rose emailed Stephens and asked that he not call her anymore.

From 2009 through 2012, Stephens periodically tried to contact Rose through email, instant messaging and social media. During this period, he emailed her numerous times, sent her seven online instant messages, and tried to contact her several times through two social media sites. However, Rose did not respond. In two of his 2010 emails, Stephens acknowledged Rose's desire not to communicate with him, professed his love for her, begged Rose to talk to him and expressed sorrow at her refusal to communicate with him.

Beginning in January 2013, Stephens' efforts to contact Rose escalated suddenly.  On January 2, 2013, Stephens unexpectedly visited the home of Rose's parents in Canton, Ohio.  As Rose's father Gary Rose (Gary) was about to leave for work at 6:20 a.m., Stephens approached him in his driveway.  Stephens asked where Rose was currently living; Gary told Stephens not to contact Rose anymore.  After speaking with Stephens, Gary went inside his home and called 911.  In response, the police stopped Stephens and informed him that Gary had complained about his trespassing.

Upon learning that Stephens had visited her parents' home, Rose became emotionally disturbed and started crying because she was afraid.  She asked her current boyfriend to start staying with her because she was afraid to be home alone.

Stephens began repeatedly calling Rose at her home and leaving voice messages.  Between January 2 and January 9, he called forty times.  Stephens blocked his phone number, but Rose recognized his voice in the voice messages.  According to her boyfriend, Rose became "very upset, visibly upset, emotionally upset over the phone calls" from Stephens.

Rose's boyfriend twice answered Stephens' phone calls on January 6 and pretended to be Rose's husband.  He told Stephens that Stephens had called the wrong number, that "his

3

wife" was not the same Shellie Rose whom Stephens was trying to locate. He also told Stephens if the calls did not stop, he would contact the police.

Stephens also tried to contact Rose at work. He called Rose's work number and was told she did not work there. Undeterred, he sent flowers to Rose's workplace on January 8; Rose returned them.

On January 9, Stephens called Rose several times between 2:00 and 3:00 a.m. and appeared at the door to her home around 7:00 a.m. with flowers. Rose's boyfriend called 911. When police arrived, Stephens was not there, but they observed him in the parking lot and arrested him. After Stephens was arrested, Rose moved from her home because she was afraid.

At the circuit court hearing on the protective order, Rose admitted that she "never directly told [Stephens] to stop contacting [her]." She also testified that Stephens had never physically abused or threatened to physically abuse her, her family members, or her boyfriend.

                              Analysis

Code § 19.2-152.10 authorizes a court to issue a protective order if the petitioner proves by a preponderance of the evidence "that [he or she] is or has been, within a reasonable period of time, subjected to an act of violence, force, or threat." Code §§ 19.2-152.9(D) and -152.10(A)(ii).

Stephens argues that Rose's "articulated reasons for being scared" are not the result of any act of violence, force or threat and that the circuit court erred in issuing a protective order because he did not commit an act of violence, force or threat. Stephens maintains that both Gary and Rose confirmed at the hearing that he has neither physically harmed Rose nor threatened to do so.

An "[a]ct of violence, force, or threat" is defined by Code § 19.2-152.7:1 as "any act involving violence, force, or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury." The statute explicitly states, "Such act includes . . . stalking." Id.

The criminal offense of stalking is described in Code § 18.2-60.3(A):

> Any person . . . who on more than one occasion engages in conduct directed at another person with the intent to place, or when he knows or reasonably should know that the conduct places that other person in reasonable fear of death, criminal sexual assault, or bodily injury to that other person or to that other person's family or household member is guilty of a Class 1 misdemeanor.

This Court has not had an occasion to address Code § 18.2-60.3(A), but the Court of Appeals has correctly identified three elements necessary to prove stalking under this statute: (1) the defendant directed his or her conduct

toward the victim on at least two occasions; (2) the defendant intended to cause fear or knew or should have known that his or her conduct would cause fear; and (3) the defendant's conduct caused the victim "to experience reasonable fear of death, criminal sexual assault, or bodily injury." See Parker v. Commonwealth, 24 Va. App. 681, 685, 485 S.E.2d 150, 152 (1997) (decided under a former version of Code § 18.2-60.3).

Physical harm or threatened physical harm to a victim is not a necessary prerequisite to the granting of a protective order under Code § 19.2-152.10, because Code §§ 19.2-152.7:1 and -152.9(D) provide that such an order may be premised upon other acts, "includ[ing], but . . . not limited to . . . stalking." Rose argued at trial, and the circuit court found, that she was entitled to a protective order in this case because Stephens had stalked her. Therefore, if Rose proved by a preponderance of the evidence that Stephens stalked her, the circuit court did not err in issuing the protective order.

Stephens argues that the evidence does not establish the elements of stalking because Rose's "fear of some unarticulated subjective potential harm" is not sufficient to do so. He insists that only "serious, violent and hostile conduct . . . is proscribed, not conduct that makes one uncomfortable or is annoying."

When an appellant challenges the sufficiency of the evidence, this Court views the evidence in the light most favorable to the prevailing party below. Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005). We presume the circuit court's decision is correct unless it is "plainly wrong" or unsupported by the evidence. Id. (internal quotation marks omitted).

Our review of the evidence presented to the circuit court indicates that it was sufficient to support the issuance of the protective order. There is no question that Stephens directed his conduct at Rose. Over a period of several years, Stephens persistently tried to contact Rose online through social media and email. In January 2013, Stephens contacted her parents to inquire of her whereabouts, called her at home, called her workplace, sent her flowers at work, and visited her home. Thus, Rose's evidence was sufficient to establish the first element of stalking.

The evidence also established that Stephens should have known his actions caused Rose to fear him. Stephens claimed before the circuit court that he did not intend to cause fear and that he did not know his actions caused fear, but Code § 18.2-60.3(A) does not require intent to cause fear or even actual knowledge. The mens rea element is satisfied if the evidence shows the defendant should have known his conduct

would cause fear.  See Code § 18.2-60.3(A) ("when he knows or reasonably should know that the conduct places that other person in reasonable fear of death, criminal sexual assault, or bodily injury") (emphasis added).

Evidence that the defendant received notice that his contacts were unwelcome may be sufficient to support a trial court's finding that the defendant should have known his continued contacts would cause fear.  See Parker, 24 Va. App. at 685-86, 485 S.E.2d at 152-53 (reasoning that the victim's silence informed the defendant that his contacts were unwelcome).

In this case, the evidence amply supports that finding. Soon after they stopped dating, Rose asked Stephens not to call her.  For the next four years, Stephens tried unsuccessfully to contact Rose through instant messaging, email and social media.  Stephens acknowledged in his 2010 emails that Rose no longer wished to associate with him and told her he did not wish to "upset" her.  Cf. id. at 686, 485 S.E.2d at 153 ("Appellant acknowledged that he was causing the victim to experience fear . . . when he said, 'Don't be afraid.'").  Additionally, in 2013, Gary told Stephens to leave Rose alone and move on with his life.  This should have been additional indicia to Stephens that Rose had already done the same.  Shortly thereafter, Stephens received a similar

message from Rose's boyfriend over the phone. Moreover, Rose returned the flowers Stephens sent to her workplace.

After several years of seeking a response from Rose to no avail, Stephens should have known that his suddenly renewed and abnormally persistent efforts to contact Rose were unwelcomed and would cause fear. The evidence is sufficient to satisfy the second element of stalking.

The third element of stalking requires that the defendant's conduct cause the victim to experience "reasonable fear of death, criminal sexual assault, or bodily injury." Code § 18.2-60.3(A). The standard is an objective one. See Parker, 24 Va. App. at 688, 485 S.E.2d at 153 ("By qualifying the word fear with the word 'reasonable,' the General Assembly intended to limit the reach of Code § 18.2-60.3 to conduct that would render an ordinary, reasonable person in the victim's circumstances in fear for his or her physical well-being.").

From 2009 until 2012, Rose did not respond to Stephens' efforts to communicate with her over the internet. In January 2013, without warning, Stephens reinitiated and dramatically escalated his efforts to contact Rose. He unexpectedly appeared at her parents' home in Ohio early in the morning. Shortly after, Rose began receiving an excessive number of telephone calls from Stephens, some between 2:00 and 3:00 a.m.

He sent flowers to her at work and called her office telephone number.  Despite Rose's failure to respond and warnings from third parties to leave her alone, Stephens appeared uninvited at her home in northern Virginia one week after appearing at her parents' home in Ohio.

When asked why the police were called, Rose responded, "Because I was scared."  She explained,

> Because I thought this was over.  I thought Mr. Stephens had moved on, and I didn't know what else to expect of him. . . .  I'm scared because I don't know how he's going to react in the future.  I don't know if this is going to happen again.  I need some sort of documentation that it has happened to protect me in an event that harm should occur.

A victim need not specify what particular harm she fears to satisfy the third element of stalking.  See Parker, 24 Va. App. at 685-86, 485 S.E.2d at 152 (upholding the trial court's finding of sufficient evidence of reasonable fear of bodily harm, "[a]lthough the victim did not specify that she was afraid for her physical well-being").

Other evidence corroborated Rose's claim of being afraid of bodily harm.  Rose became emotionally upset and cried when she learned that Stephens had visited her parents' home.  In fact, she was so afraid that she asked her boyfriend to stay with her at her home.  When presented with this evidence, we cannot say the circuit court was plainly wrong in determining

that Rose was reasonably afraid of criminal sexual assault or bodily injury.

Conclusion

Code § 19.2-152.7:1 expressly includes stalking as an act of violence, force or threat.  There is sufficient evidence to support the circuit court's finding of stalking on the part of Stephens under Code § 18.2-60.3(A).  Therefore, we hold that the circuit court did not err in granting Rose's petition for a protective order under Code § 19.2-152.10.  The judgment of the circuit court will be affirmed.

_Affirmed._